BOBBY L. BUTLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JOSE AND SYLVIA CRESPO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Butler v. Commissioner
Docket Nos. 5474-90, 5563-90
United States Tax Court
T.C. Memo 1991-118; 1991 Tax Ct. Memo LEXIS 131; 61 T.C.M. (CCH) 2175; T.C.M. (RIA) 91118; March 18, 1991, Filed *131 Decisions will be entered under Rule 155.
Bobby L. Butler, pro se in docket No. 5474-90. Jose Crespo, pro se in docket No. 5563-90. Abbey Garber, for the respondent. PANUTHOS, Special Trial Judge. PANUTHOS
MEMORANDUM FINDINGS OF FACT AND OPINION This case was heard pursuant to the provisions of section 7443A(b) and Rules 180 et seq. [1]
Respondent determined the following deficiencies in and additions to petitioners' Federal income tax for the taxable year 1986: Bobby L. Butler, Docket No. 5474-90
Addition
Deficiency
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
$ 3,909
$ 195.45
50% of the interest
due on $ 3,909
Jose and Sylvia Crespo, Docket No. 5563-90
$ 3,655
$ 182.75
50% of the interest
due on $ 3,655
The issues for decision are (1) whether petitioners had unreported tip income and (2) whether *132 petitioners are liable for additions to tax for negligence. Upon motions made by the parties, these cases were consolidated for purposes of trial, briefing, and opinion. FINDINGS OF FACT Some of the facts have been stipulated and are so found. At the time of filing the petitions herein petitioner Bobby L. Butler resided at Dallas, Texas, and petitioners Jose and Sylvia Crespo resided at Desoto, Texas. During 1986, petitioners Bobby L. Butler and Jose Crespo (hereinafter petitioners) worked as waiters during the evening shift at the Palm restaurant located in the business section of downtown Dallas, Texas. The patrons of the restaurant consisted primarily of business persons, tourists (both foreign and domestic), and persons attending conventions. Dinner entrees ranged in price from approximately $ 10 to $ 22. The Palm employed approximately 15 waiters [2] on the evening shift. Each waiter shared a portion of his tip income with busboys and bartenders. It was customary for each waiter to give 20 percent of his tip income, each shift, to the busboys and 5 percent of his tip income, each shift, to the bartenders. These payments are known as "tipouts." During busy shifts (usually *133 two nights per week), the Palm employed roving busboys. It was customary for each waiter to give $ 5 of his tip income to the roving busboys each shift. Each sale at the Palm is recorded as made by a particular waiter. Each waiter is identified by a number, and the particular waiter's number is reflected on the check. When a sale is processed at the cash register, the waiter's number on the check is input on the register. In the event a party is served by more than one waiter, the sale is recorded on the records of the Palm as made by one waiter. Petitioners did not maintain any contemporaneous records of their tip income. On their respective 1986 Federal income tax returns, petitioners reported tip income and "tipouts" as follows: Petitioner
Reported Tips
Reported "Tipouts"
Butler
$ 17,373
$ 4,509
Crespo
$ 21,614
$ 3,829
Respondent examined the records of the Palm restaurant in *134 conjunction with an examination of petitioners' returns to determine whether tips were properly reported. Respondent's agents also interviewed various employees of the Palm. The Palm had gross sales in 1986 of $ 3,373,263. Respondent reviewed the Employer's Annual Information Return of Tip Income and Allocated Tips (Form 8027) for 1986. The return reflects total charged receipts of $ 2,807,342 and total charged tips of $ 470,003. These two figures result in a "charged tip rate" of 16.74 percent. Based on interviews with employees, respondent determined that (1) cash tips averaged 1.5 percent less than charge tips, (2) that the "stiff rate" (occasions when no tip was left) was 2 percent, and (3) that 20 percent should be allowed for "tipouts." Respondent thus computed adjusted tips as follows: Charge tip rate
16.7
Less: Factor for difference between
cash and charge tips
1.5
Cash tip rate
15.2
Gross sales subject to tipping
$ 3,373,263
Less: Stiffs 2%
67,465
Charges sales with charge tips
2,807,342
Total sales subject to cash tipping
498,456
Multiply: Cash tip rate
X      15.2
Cash tips received
75,765
Add: Charged tips
470,003
Total tips received
545,768
Less: Tipouts 20%
109,154
Adjusted tips
$   436,614
*135 Respondent then applied the percentage of sales generated by each waiter to determine the share of tips applicable to petitioners as follows: Petitioner
Sales
Percentage of Tips to All Waiters
Tips
Butler
$ 214,429
.064196
$ 28,029.21
Crespo
$ 265,259
.079414
$ 34,673.49
Respondent determined that petitioner Butler's omitted tip income was $ 14,908.21 and petitioner Crespo's omitted tip income was $ 16,888.94 calculated as follows: Butler
Crespo
Tips per return
$ 17,373.00
$ 21,614.00
Less: "Tipouts" per return
* 4,252.00
3,829.45
Net tips per return
$ 13,121.00
$ 17,784.55
Tips per respondent
$ 28,029.21
$ 34,673.49
Omitted tip income
$ 14,908.21
$ 16,888.94
Petitioners do not dispute much of the formula used by respondent to determine the omitted tip income. Petitioners argue (1) that the cash tip rate should be 8.4 percent rather than 15.2 percent; (2) *136 that the "tipouts" should be 25 percent (20 percent for busboys and 5 percent for bartenders) rather than the total of 20 percent determined by respondent; (3) an allowance should be made of $ 520 for each waiter for "tipouts" to the roving busboys; and (4) tips should be computed based on the number of hours worked rather than sales generated. OPINION Tip income is includable in gross income as compensation for services rendered. Sec. 61(a); sec. 1.61-2(a)(1), Income Tax Regs.; Killoran v. Commissioner, 709 F.2d 31 (9th Cir. 1983), affg. a Memorandum Opinion of this Court; Meneguzzo v. Commissioner, 43 T.C. 824 (1965). It is well established that if a taxpayer keeps no records of tip income or the records do not clearly reflect income then respondent may reconstruct income by any means the Secretary deems reasonable. Sec. 446; Meneguzzo v. Commissioner, supra. The courts have previously accepted formulas in the reconstruction of tip income. Cracchiola v. Commissioner, 643 F.2d 1383 (9th Cir. 1981), affg. a Memorandum Opinion of this Court. A taxpayer may point out areas or specific instances *137 in which the method used by respondent fails to reflect his true income. Miller v. Commissioner, 237 F.2d 830 (5th Cir. 1956). Respondent's determination is presumed correct and the burden is on petitioners to show otherwise. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). With respect to petitioners' first argument, that the cash tip rate should be 8.4 percent rather than 15.2 percent, we find that petitioners have failed in their burden of proof. Petitioners presented some rather vague testimony that cash tips were less than tips from charge sales. However, petitioners were unable to specify the amount or percentage of cash tips and they did not maintain any contemporaneous records in this regard. Petitioners' accountant apparently derived the 8.4 percent cash tip rate from a survey conducted of some waiters at the Palm in 1990. Respondent's 15.2 percent cash tip rate is based on interviews with employees during the examination of the returns. Respondent's income reconstruction need not be exact, but need only be substantially correct. Anson v. Commissioner, 328 F.2d 703, 705 (10th Cir. 1964), affg. a Memorandum *138 Opinion of this Court. We find that petitioners have failed to establish that respondent's determination is incorrect with respect to the cash tip rate. Respondent allowed a "tipout" rate of 20 percent for tips to busboys and bartenders. Petitioners argue that they are entitled to "tipouts" of 25 percent. Petitioners also argue that an allowance should be made for the roving busboys. Petitioners testified that they routinely gave 20 percent of their total tips to busboys and 5 percent of their tips to bartenders. A manager of the Palm confirmed this "tipout" rate. The parties stipulated that: It is customary for each waiter at the Palm to give twenty percent (20%) of his tip income each shift to the busboys who assist him and five percent (5%) of his tip income each shift to the bartenders. Such payments are referred to as "tipouts." During busy shifts (usually two nights a week), the Palm employs "roving busboys," who also assist the waiters. It is customary for each waiter to give $ 5.00 of his tip income to the roving busboys each shift.
Based on this record, we are satisfied that petitioners are entitled to "tipouts" of 25 percent. We also hold that they are *139 entitled to a further deduction of $ 520 each ($ 5 (twice per week) X 52 weeks) for "tipouts" to the roving busboys. Thus, respondent's determination is adjusted in this regard. Petitioners' final argument is that the formula should be based upon the number of hours each waiter worked as opposed to the amount of sales generated by each waiter. Petitioners argue that McQuatters v. Commissioner, T.C. Memo 1973-240, utilized the hours worked by each waiter and that we should follow that formula. Respondent argues that utilizing the total sales generated by each waiter is a more accurate reflection of tips than utilizing the number of hours worked. We agree with respondent. Uncertainties as to the amount of activity of a particular waiter have been eliminated by utilizing the amount of sales generated by each waiter. We are satisfied that respondent's formula is substantially correct in this regard. Anson v. Commissioner, supra.
Petitioners' failure to maintain accurate records and their failure to report a portion of their total tip income is due to negligence or intentional disregard of the rules and regulations. Meneguzzo v. Commissioner, supra at 836. *140 Petitioners have failed in their burden of showing that they were not negligent. Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). Based on the foregoing, Decisions will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as amended and as in effect for the tax year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. A roster of waiters employed at the Palm reflects 25 names although some worked only a few hours during the year.↩
*. While the return (Schedule A and Form 2106) reflects an amount of $ 4,509, the disallowed "tipout" was $ 4,252.↩